## Case No. 14,462.

### UNITED STATES v. APPEL.

[22 Int. Rev. Rec. 169.]

District Court, D. Louisiana. April 18, 1876.

INTERNAL REVENUE—INSUFFICIENT RETURNS—EXTRA ASSESSMENTS.

[Rev. St. § 3387, provides for returns by cigar manufacturers. Id. §§ 3371, 3396, authorize the commissioner of internal revenue, on information that cigars have been made without payment of the tax due thereon, to make an assessment for the tax omitted to be paid. A cigar manufacturer reported the amount of cigars made, showing the use of 38 pounds of leaf tobacco for every 1,000 cigars manufactured. The reports of other manufacturers showed an average use of about 24 pounds of leaf tobacco for every 1,000 cigars made. *Held*, in an action to recover an extra assessment made under such circumstances, that where the manufacturer offered evidence that his cigars were of a larger size than usual, and required a greater number of pounds of leaf tobacco to the 1,000 cigars, it was for the jury to determine whether such evidence rebutted the presumption which the returns of other manufacturers raised against defendant.]

At law.

NIXON, District Judge (charging jury). The case which you are called upon to decide, is important only because it involves the legality of the methods adopted by the commissioner of internal revenue, in estimating the amount of taxes which has been omitted to be paid by cigar manufacturers. The 3387th section of the Revised Statutes enacts, "That every person before commencing, or, if he has already commenced, before continuing the manufacture of cigars, shall furnish, without previous demand therefor, to the collector of the district, a statement in duplicate under oath, setting forth the place, and, if in a city, the street and number of the street where the manufacture is to be carried on, * * * and shall give a bond in conformity with the provisions of this title, in such penal sum as the collector may require, not less than $500, with an addition of $100 for each person proposed to be employed by him in making cigars; * * * said bond shall be conditioned that he shall not employ any person to manufacture cigars who has

not been duly registered as a cigar maker; that he shall not engage in any attempt by himself or by collusion with others, to defraud the government of any tax on his manufactures; that he shall render correctly all the returns, statements, and inventories prescribed; that whenever he shall add to the number of cigar makers employed by him he shall immediately give notice thereof to the collector of the district; that he shall stamp, in accordance with law, all cigars manufactured by him, before he offers the same for sale and before he removes any part thereof from the place of manufacture; that he shall not knowingly sell, purchase, expose, or receive for sale any cigars which have not been stamped as required by law; and that he shall comply with all the requirements of law relating to the manufacture of cigars."

Under the provision of this section, the defendant, Adolph Appel, on the 22d day of July, 1872, executed to the government a bond in the penalty of nine hundred dollars, with Henry T. Katencamp as his surety, that he would comply with all the requirements of said law relating to the manufacture of cigars, and this action is brought upon said bond for breach of its condition, in not paying the amount of taxes due for his manufacture, during the year 1873. The execution of the bond is admitted, and it was shown by the deputy collector and not disputed by the defendant, that on the 1st of January, 1873, he filed a sworn statement, exhibiting the amount of leaf tobacco then on hand to be 1,450 pounds. He made monthly statements, during the year under oath, and these show the whole amount purchased by him was 4,135 pounds. He claimed, for allowance, in his different statements 703 pounds, for tobacco clippings, etc., sold or damaged, before manufacture, and also for 700, which he acknowledged to have on hand at the close of the year. Making these deductions, it appears from his statements, that he manufactured into cigars, during the year, 4,182 pounds of leaf tobacco. The whole number of cigars, which he reports to have manufactured, was 110,575. An abstract of the monthly statements of Appel during the year 1873 being made, it was sent to the office of the commissioner of internal revenue for examination, and upon comparing the amount of leaf tobacco manufactured, with the number of cigars reported, it was found that the defendant had used about 38 pounds of leaf tobacco for every 1,000 cigars made. The commissioner, carefully comparing the reports of the manufacturers of cigars, from all parts of the United States, and ascertaining from the comparison that, averaging the same, 1,000 cigars of the ordinary size ought to be reported for about every 23 or 24 pounds of leaf tobacco used, he assumed, in the absence of explanation, that there was a failure on the part of the defendant to report the whole manufacture in the present case, and ordered an assessment to be made for

the apparent deficiency; and this suit is brought to recover such deficiency.

The commissioner claims the right to make the said assessment under the provisions of sections 3396 and 3371 of the Revised Statutes. The former authorizes him to prescribe such regulations for the inspection of cigars and the collection of the tax thereon, as he may deem the most effective for the prevention of frauds in the payment of such tax; and the latter charges him with the duty, upon such information as he can obtain, in cases where cigars have been made and sold, or removed from the place of manufacture without the payment of the tax due thereon, to estimate the amount of the tax which has been omitted to be paid, and to make an assessment therefor, authorizing it to be made at any time within two years after the sale or removal. These provisions confer ample authority upon the commissioner, and vest him with a large discretion in the use and choice of methods for preventing frauds in the payment of taxes by cigar manufacturers. Under them he claims the authority to hold: (1) That prima facie evidence of sale or removal of cigars without the payment of the tax is furnished from the abstract reports of cigar manufacturers' accounts, made up by collectors from the manufacturers' yearly inventories and monthly reports of material on hand and purchased, and of cigars made and sold, together with the collector's own account of stamps sold, and which abstracts are rendered to him; and from the abstracts of sales made to cigar manufacturers of leaf tobacco, taken from the books required to be kept of all such transactions by leaf dealers. (2) That the failure of cigar manufacturers to make return of products corresponding to the amount of material had and used and corresponding to what is well known to be the average production of cigars from a given quantity of material, is made prima facie evidence of sale and removal of cigars without the payment of the tax, the presumption being that the cigars were actually made, but the tax not paid. (3) That upon such evidence and presumption the commissioner may proceed, upon receiving from collectors such abstract reports, to estimate the amount of tax apparently omitted to be paid, and to assess the same, subject, however, to such explanations and rebutting evidence as the manufacturer may be able to offer before collection of such assessment is made.

Now, it is true, gentlemen, as was insisted by the counsel of the defendant, that the instructions issued by the commissioner of internal revenue to his assistants are not binding, unless they are issued in pursuance of law; that there is nothing contained in the internal revenue laws, which authorizes the commissioner to designate any arbitrary number of pounds of tobacco, to be used in the manufacture of 1,000 cigars, which absolutely binds the manufacturer, in the sense that the distiller is bound in estimating the capacity of his still; and that although experience may teach the commissioner that on the average 30 pounds of tobacco will produce 1,000 cigars, it does not follow, as a conclusion of law, that manufacturers may be assessed and must pay taxes for all cigars, which ought to be made from the leaf tobacco used, on the basis and calculation of 1,000 cigars for every 30 pounds of tobacco. All this is conceded, and I do not understand that the commissioner claims any such authority. What he claims is, a right to examine the returns of the manufacturer; to institute a comparison between the product of the manufactured article and the quantity of leaf tobacco used, and where any considerable deficiency exists, in the produce based on the return of 1,000 cigars for every 25 pounds of tobacco used, to call upon the manufacturer for an explanation and where no reasonable explanation is given, to treat such deficiency as prima facie evidence of the non-payment of the full tax required on his production.

I am clear that the commissioner has not gone beyond the provisions of the law, or the discretion vested in him, in prescribing and establishing such regulations for the prevention of fraud, and that in the present case, where the returns show the use of about 38 pounds of leaf tobacco in the manufacture of 1,000 cigars, he was justifiable in assessing for a deficiency of tax, and in calling upon the defendant, Appel, for an explanation. You have heard the testimony of the defendants, in explaining the consumption of so much leaf tobacco for the manufacture of the product rendered, and it is for you to consider it, and to decide whether it is satisfactory. They offer proof, tending to show that of the 110,575 cigars manufactured by Appel during the year, 75,000 were of a large size, and that the general average of his manufacture were larger in size than are ordinarily made. This would, of course, require a greater number of pounds of leaf tobacco in the manufacture of every 1,000 cigars; and if you believe the evidence, and think it fairly accounts for the use of 38 pounds for a thousand, it will be your duty to find a verdict for the defendants. If, on the other hand, you are not satisfied that the testimony offered rebuts the presumption which the returns raise against the defendant, Appel, you should render a verdict for the government for such sum as will cover the deficiency of which, after a fair consideration of all the evidence, you believe exists.